UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X

Nancy Vazquez,

                Plaintiff,        **MEMORANDUM AND ORDER**

                                  19-CV-1613 (KAM)

    - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
--------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

        Pursuant to 42 U.S.C. § 405(g), Nancy Vazquez ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant" or "the Commissioner"), which found that plaintiff was not disabled within the meaning of Title II and XVI of the Social Security Act ("the Act") and, therefore, not eligible for disability benefits and supplemental security income benefits.  (ECF No. 1, "Compl.")

        Presently before the court is plaintiff's motion for judgment on the pleadings and defendant's cross-motion for judgment on the pleadings (ECF. Nos. 14, Notice of Motion for Judgment on the Pleadings, and 16, Cross Motion for Judgment on the Pleadings.)  For the reasons set for below, plaintiff's motion is respectfully DENIED and the Commissioner's cross-motion is GRANTED.

## BACKGROUND

### a. Procedural History

On May 29, 2015, plaintiff filed applications for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI"), alleging a disability onset date of April 20, 2013. (ECF No. 18-1, Joint Statement of Facts ("JSF") at 1; ECF No. 19, Administrative Transcript ("Tr.") 190-91.) Plaintiff claims she is disabled as a result of anxiety, hyperextension, asthma, depression, systemic inflammatory response syndrome, acute pancreatitis, hypokalemia, degenerative joint disease, constipation, effusion of the knees, herniated disc in neck and post traumatic stress disorder ("PTSD"). (Tr. 12, 96-97, 106-107, 190-191; JSF at 1.)

On September 15, 2015, the Social Security Administration ("SSA")) denied plaintiff's applications on the basis that her "condition was not severe enough to keep [her] from working." (Tr. 116-17, 124.) Consequently, plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 126-27.) On December 19, 2017, plaintiff, represented by Lauren Schneer, appeared before ALJ Mark Solomon. (Tr. 12, 62-95.) Vocational Expert ("VE") Pat Green also testified at the administrative hearing. (Tr. 12, 62-95.) By a decision dated March 9, 2018, the ALJ found that plaintiff was not disabled as defined under the Act, and denied plaintiff's DIB and SSI

applications. (Tr. 9-29.) On April 2, 2018, plaintiff submitted a Request for Review of the ALJ's decision dated March 9, 2018. (Tr. 189.) On July 23, 2018, plaintiff, represented by Erin Evers, Esq. and Emilia Sicilia, Esq., submitted a brief[1] in support of her appeal, asserting that 1) the ALJ's residual functional capacity ("RFC") determination failed to include all impairments; 2) the ALJ improperly substituted his medical opinion for those of the treating sources; 3) the ALJ erred in weighing the evidence; and 4) the VE testimony was inconsistent. (Tr. 5; 280-84.) On January 11, 2019, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4; JSF 1.)

On March 15, 2019, plaintiff commenced the instant action in federal court. (*See generally*, Compl.)

### b. Medical and Non-Medical Evidence

On November 26, 2019, the parties filed a Joint Stipulation of Relevant Facts, which the court incorporates by reference herein. (ECF No. 18-1.) The court addresses only those facts relevant to the ALJ's decision.

### 1. Non-Medical Evidence

Plaintiff was 40 years old as of her alleged onset date of disability, *i.e.* April 20, 2013. (Tr. 96.) Plaintiff

---

[1] Plaintiff's brief to the Appeals Council was erroneously dated July 23, 2017.

has a bachelor's degree, and work experience as a foster caretaker, YMCA supervisor, tax coordinator, career advancement coach and state youth court employee.  (Tr. 67, 208-09.)

Adult Function Report

In plaintiff's adult function report dated June 10, 2015, plaintiff reported that her daily routine consists of taking pain medication when she wakes up, making breakfast, getting dressed, going to and from appointments, going home, resting, eating and taking medication before going to bed.  (Tr. 215.)  Plaintiff stated that she can dress herself, bathe, prepare basic meals, mop, dust furniture and clean dishes.  (Tr. 215-217.)  Plaintiff reported she cannot lift heavy objects, stand for long periods, or walk more than one block without rest.  (Tr. 218.)  Plaintiff socializes over the phone, but reports that she does not make social visits.  (Tr. 218.) Plaintiff also spends time listening to music, reading, watching TV and having conversations over the phone.  (Tr. 219.) Plaintiff can sit in elevated chairs with cushions, can climb stairs if she rests between flights, speak, hear, use her hands, and see with glasses or contact lenses.  (Tr. 220.) Plaintiff cannot kneel or squat without pain.  (*Id.*)  Plaintiff is able to pay attention, can follow oral and written instructions, has no problems interacting with authority figures, and has no memory

problems.  (Tr. 221-222.)  Stress and changes in schedule induce anxiety attacks and shortness of breath.  (*Id.*)

Hearing Testimony

At the December 19, 2017 hearing before the ALJ, plaintiff testified that she stopped working because she had several psychological breakdowns at work.  (Tr. 67-68.)  She stated that management was bullying her, writing her up for inconsequential things and pushing her from her job at the same time she learned that her father had been diagnosed with cancer.  (*Id.*)  Plaintiff was involved in a car accident in 2012, and she testified that her previous boss had been more lenient in allowing her to attend physical therapy and work from home.  (Tr. 69-70.)  Plaintiff further testified that she can groom, bathe, and dress without assistance.  (Tr. 71.)  She used a cane while she was still working and continues to use it to assist with walking.  (Tr. 71.)  She cannot travel alone on public transportation due to phobias.  (Tr. 72.)  Plaintiff testified that she occasionally drinks one cup of vodka and orange juice in order to relax.  (Tr. 73.)  She has persistent panic attacks that sometimes prevent her from making appointments and leaving her apartment.  (Tr. 80.)

Vocational Expert Testimony

Also at the December 19, 2017 administrative hearing, the VE testified that a person of plaintiff's age, education,

work experience, and ALJ-determined RFC, could not perform
plaintiff's past work but could perform other jobs in the
national economy. (Tr. 90-91.) These jobs include working as a
stuffer (DOT# 731.685-014, 180,000 jobs in the national
economy), a sorter (DOT# 521.687-086, 80,000 jobs in the
national economy), and a hand bander (DOT# 920.687-030, 85,000
jobs in the national economy). (Tr. 90-91.) If an individual
were off task for more than 10 percent of the workday, unable to
complete tasks in a timely manner, and "unable to perform at a
consistent pace," there would not be any jobs available to
someone with plaintiff's limitations. (Tr. 91-92.) A person
incapable of "get[ting] along with coworkers or peers without
unduly distracting them or exhibiting behavioral symptoms" could
not hold any job. (Tr. 92.)

### 2. Medical Evidence

#### a. Contemporaneous Medical Records

Dr. McGee, an osteopath, reported that plaintiff's
back had been injured in a motor vehicle accident. (Tr. 1208.)
Dr. McGee noted that plaintiff's injury limits her ability to
stand for long periods and would affect some tasks at her work.
(*Id.*) On March 24, 2014, plaintiff was admitted to the Wyckoff
Heights Medical Center for left knee pain. (Tr. 286.) An exam
revealed that plaintiff had decreased range of motion and
swelling on the anterior of her left knee. (Tr. 287.)

Plaintiff was discharged with a cane, bandage and pain medication. (Tr. 288-89.)  On August 1, 2014, Surekha Bharne, M.D., examined plaintiff for knee pain.  (Tr. 293.)  Dr. Bharne noted that plaintiff had pain in both knees, right worse than left, and that plaintiff reported experiencing neck, back, and joint pain.  (Tr. 293.)

On, September 1, 2014, plaintiff's musculoskeletal and neurological exam results came back as normal.  (Tr. 1025.)  An MRI performed by Dr. Michael Reichel on September 2, 2014 showed fractures in the right L3 and L4 transverse processes and a mild disc bulge at L4/L5.  (Tr. 1139.)  A knee examination performed on November 12, 2014 by Joseph Gorum, MD, showed normal range of motion, no swelling or redness, no flexion deformity and no tenderness.  (Tr. 290-91.)  At another exam by Petris Dzenis, MD, plaintiff experience pain in both knees and limited extension.  (Tr. 589-90.)  On December 10, 2014, Dr. Bharne found plaintiff's musculoskeletal exam normal except for mild crepitus, swelling, tenderness and limited range of motion in the right knee and diagnosed plaintiff with joint pain and chondromalacia of patella.  (Tr. 482-83.)  On February 4, 2015, Dr. Gorum treated plaintiff for pain and noted that plaintiff cannot complete a closed MRI due to her phobia.  (Tr. 522.)

On February 16, 2016, Dr. Mehvash Hadi, D.O. wrote a letter noting that she has treated plaintiff for over a year,

7

and plaintiff requires a machine every day for her asthma. (Tr. 1641.)  In a follow up on September 18, 2017, Dr. Hadi noted plaintiff experienced headaches, short term memory loss, and leg pain with tingling.  (Tr. 1664.)  In October and November 2017 Mesh Alla, M.D. saw plaintiff and noted that plaintiff's sensory systems were decreased to pinprick and touch in the lower extremities.  (Tr. 1180-1182.)  Dr. Mesh assessed paresthesia of the skin, type 2 diabetes, pain in legs and retrograde amnesia.[2] (Tr. 1180.)

### b. Medical Opinion Reports

Medical Opinion of Consultative Examiner, Ashley Dolan, Psy.D.

The ALJ examined psychological evidence provided by psychologist Ashley Dolan, in which Dr. Dolan opined that although plaintiff has some limitations on her ability to deal with stress, she can relate adequately to others, maintain a regular schedule, maintain concentration, and perform simple

---

[2] Several exams and plaintiff's testimony in the fall of 2017 recounted that plaintiff experienced memory loss.  (Tr. 81-82; 1664; 1212-14.)  This recent development contradicts other evidence that plaintiff suffered no memory-related problems, including her adult function report dated June 2015.  (Tr. 221-222.)  The ALJ credited evidence from 2015 and earlier in 2017 showing plaintiff's short-term memory was intact, albeit impeded by her pain and anxiety problems.  (Tr. 535, 947.)  Though the ALJ did not discuss each of these findings in detail, he did discuss evidence that plaintiff could "understand, remember and apply. . . and learn" on a moderately limited basis. (Tr. 21-22.)  He found that "in understanding, remembering, or applying information, the claimant has no limitation," while acknowledging that longstanding mental issues such as PTSD and depression interfered with plaintiff's ability to concentrate.  (Tr. 15.)  Because plaintiff does not assert that the ALJ erred in making these findings, and the findings are supported by evidence in the record, the court accepts the ALJ's finding that plaintiff had no memory problems.

tasks independently.  (Tr. 21, 533-37.)  The ALJ assigned Dr. Dolan's opinion partial weight.  (Tr. 21.)

Medical Opinion of Consultative Examiner Dr. Yevsikova, M.D.

The ALJ reviewed evidence provided by Dr. Yevsikova, who conducted a one-time consultative examination of plaintiff on July 29, 2015.  (Tr. 19-20, 538-42.)  Dr. Yevsikova found that plaintiff had some limitations affecting her movement and that she needed her cane.  (Tr. 538-42.)  The ALJ assigned Dr. Yevsikova's opinion partial weight, noting that Dr. Yevsikova performed a one-time exam and the opinion was consistent with the ability to perform sedentary or light work.

Medical Opinion of Jillian Torigian, RPA-C

Jillian Torigian, RPA-C, wrote a letter opining that plaintiff should be considered for disability benefits.  (Tr. 20, 548.)  Ms. Torigian noted that plaintiff had trouble using public transportation due to her asthma and other health issues. The ALJ gave Ms. Torigian's opinion little weight because she was not an accepted medical source, and her statements were vague and conclusory and did not provide functional restrictions.  (Tr. 20.)

Medical Opinion of Consultative Examiner, Dr. Kropsky, M.D.

The ALJ considered evidence from Dr. Kropsky, who conducted a one-time examination of plaintiff in August 2017. (Tr. 20.)  Dr. Kropsky found that plaintiff had some serious

limitations on her ability to lift weight and could, *inter alia*,
sit for four hours, stand for three hours, and walk one hour in
an eight-hour day.  (Tr. 20, 960-61.)  The ALJ assigned Dr.
Kropsky's opinion little weight due to inconsistencies with
other evidence in the record and internal inconsistencies.  (Tr.
20.)

Medical Opinion of Consultative Examiner, John Nikkah, Ph.D.

        The ALJ examined evidence provided by consultative
examiner Dr. John Nikkah. (Tr. 21-22.)  Dr. Nikkah examined
plaintiff once, in August 2017, and found that plaintiff was
mildly limited in her ability to understand, remember and apply
simple instructions and directions; moderately limited in her
ability to understand, remember or apply complex instructions
and directions; mildly limited in her ability to use reason and
judgment to make work-related decisions; moderately limited in
her ability to sustain concentration to perform a task at a
consistent pace; and was not limited in her ability to maintain
personal hygiene, appropriate attire, or be aware of normal
hazards.  (Tr. 948.)  Dr. Nikkah further found that the
"[r]esults of the examination appear to be consistent with
psychiatric problems but in itself, this does not appear to be
significant enough to interfere with the claimant's ability to
function on a daily basis." (*Id.*)  The ALJ assigned Dr.
Nikkah's opinion partial weight because it was a one-time exam

10

that showed mild to moderate limitations which were consistent with plaintiff's RFC functional restrictions.  (Tr. 22.)

## LEGAL STANDARD

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing. . . of notice of such decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. §§ 405(g), 1383(c)(3).  A district court, reviewing the final decision of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998); *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004).

A district court may set aside the Commissioner's decision only if the decision is based on legal error or if the factual findings are not supported by substantial evidence. *Burgess v. Astrue,* 537 F.3d 117, 127 (2d Cir. 2008). Substantial evidence is "more than a mere scintilla" and must be relevant evidence that a reasonable mind would accept as adequate to support a conclusion.  *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)).  If there is substantial evidence in the record to support the Commissioner's factual findings, those

findings must be upheld. 42 U.S.C. § 405(g).  Inquiry into legal
error "requires the court to ask whether 'the claimant has had a
full hearing under the [Commissioner's regulations] and in
accordance with the beneficent purposes of the [Social Security]
Act.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  The
reviewing court does not have the authority to conduct a de novo
review, and may not substitute its own judgment for that of the
ALJ, even when it might have justifiably reached a different
result.  *Cage v. Comm'r*, 692 F.3d 118, 122 (2d Cir. 2012).

To receive disability benefits, claimants must be
"disabled" within the meaning of the Act.  *See* 42 U.S.C. §§
423(a), (d).  A claimant is disabled under the Act when she is
unable to "engage in any substantial gainful activity by reason
of any medically determinable physical or mental impairment
which can be expected to result in death or which has lasted or
can be expect to last for a continuous period of not less than
12 months."  42 U.S.C. § 423(d)(1)(A); *see also Shaw v. Chater*,
221 F.3d 126, 131–32 (2d Cir. 2000).  The impairment must be of
"such severity" that the claimant is not only unable to do her
previous work, but also unable to engage in any other kind of
substantial work which exists in the national economy.  42
U.S.C. § 423(d)(2)(A).  "[S]everity" is assessed in view of the
"combined effect of all of the individual's impairments [and]
without regard to whether any such impairment, if considered

separately, would be of such severity." 42 U.S.C. §
423(d)(2)(B).

"The Commissioner must consider the following in
determining a claimant's entitlement to benefits: '(1) the
objective medical facts [and clinical findings; (2) diagnoses or
medical opinions based on such facts; (3) subjective evidence of
pain or disability... ; and (4) the claimant's education
background, age, and work experience.'" *Balodis v. Leavitt*, 704
F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*,
174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the
Commissioner, a five-step sequential evaluation process is used
to determine whether the claimant's condition meets the Act's
definition of disability. *See* 20 C.F.R. § 404.1520.  During
this five-step process, the Commissioner must consider whether
"the combined effect of any such impairment . . . would be of
sufficient severity to establish eligibility for Social Security
benefits." 20 C.F.R. § 404.1523.  Further, if the Commissioner
does find a combination of impairments, the combined impact of
the impairments, including those that are not severe (as defined
by the regulations), will be considered in the determination
process.  20 C.F.R. § 416.945(a)(2).

In steps one through four of the sequential five-step
framework, the claimant bears the "general burden of proving

13

disability." *Burgess*, 537 F.3d at 128; *see also DeChirico v. Callahan*, 134 F. 3d 1177, 1179-80 (2d Cir. 1998).  In step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

<u>**DISCUSSION**</u>

**I. The ALJ's application of the Sequential Five-Step Analysis**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 20, 2013, the alleged onset date.  (Tr. 14.)

At step two, the ALJ found that plaintiff had the following severe impairments: lumbar and cervical degenerative disc disease and history of cervical herniation; osteoarthritis; pancreatitis; history of hepatomegaly; asthma and chronic bronchitis; PTSD; depression; alcohol abuse; and, recently diagnosed diabetes with neuropathy.  (*Id.*)

At step three, the ALJ found that plaintiff did not have an impairment or a set of impairments that met the severity of one of the listed impairments in 20 C.F.R. Part 202, Subpart P, App'x 1.  (Tr. 15-16.)  The ALJ considered whether plaintiff was disabled under listing § 12.04 (Depression, Bipolar and

14

related disorders), and concluded that plaintiff did not satisfy the requirements of "paragraph B" because she did not have either two "marked" limitations or one "extreme" limitation, and the evidence failed to establish the presence of "paragraph C" criteria. [3] (*Id.*)

At step four, the ALJ determined that plaintiff would not be able to perform her past relevant work as a supervisor, caretaker or tax coordinator. (Tr. 21-22; ECF. No. 18-1 at 2.) Plaintiff had previously performed a skilled job at the light exertional level. (Tr. 22.)  The ALJ found that plaintiff was limited to unskilled, sedentary work, where interaction with others is kept to a minimum.  (Tr. 22.)

At step five, the ALJ found that plaintiff was able to perform a variety of jobs that existed in significant numbers,

---

[3] An ALJ's failure to explain his reasoning for finding that a plaintiff did not meet the paragraph C criteria can be grounds for remand, *see Bohn v. Comm'r of Soc. Sec.*, No. 10-CV-1078 (TJM) (DEP), 2012 WL 1048607, at *10 (N.D.N.Y. Mar. 5, 2012), this is not the case when "ALJ's reasons can be discerned from other steps in the ALJ's analysis or from the evidence in the record." *Howarth v. Berryhill*, No. 3:16-CV-1844 (JCH), 2017 WL 6527432, at *5 (D. Conn. Dec. 21, 2017); *see also Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982).  Paragraph C requires proof that plaintiff has "a minimal capacity to adapt to changes in his environment or to demands that are not already part of his [or her] daily life." *Gabriel C. v. Comm'r of Soc. Sec.*, No. 18-CV-671 (ATB), 2019 WL 4466983, at *8 (N.D.N.Y. Sept. 18, 2019.)  In this case, the ALJ explained that "[Plaintiff] remains capable of performing activities of daily living" and while she has suffered from mental challenges, "[n]otations indicate the claimant responded well to medication" and has seen improvement in her PTSD and depression symptoms.  (Tr. 21.)  The ALJ references evidence from two psychological consultants who had indicated that plaintiff had the "ability to function on a daily basis," could "maintain a regular schedule, [and] was able to learn new tasks."  (Tr. 21-22.)  These findings, along with the ALJ's thorough discussion of Paragraph B, support the ALJ's determination that the plaintiff did not meet the requirements of paragraph C.  *See Figueroa v. Saul*, No. 18-CV-4534 (JLC), 2019 WL 4740619, at *23 (S.D.N.Y. Sept. 27, 2019).

in the national economy.  (Tr. 23.)  After considering the

Medical-Vocational guidelines, Dictionary of Occupational Titles

and hearing testimony from a vocational expert, the ALJ

determined that plaintiff is able to perform sedentary,

unskilled SVP 2 occupations, including a sorter (80,000 jobs in

the national economy), stuffer (180,000 jobs in the national

economy); and hand bander (85,000 jobs in the national economy).

Based on the forgoing analysis, the ALJ decided

plaintiff has not been disabled, as defined by the Social

Security Act, from April 20, 2013 through the date of the

decision.  (Tr. 24.)

## II. The ALJ did not commit error when he assigned Dr. Kropsky's opinion little weight.

First, plaintiff contends that the ALJ committed legal

error when he gave consulting examiner Benjamin Kropsky's

opinion "little weight."  (ECF No. 15 at 3; Tr. 20.)  Plaintiff

asserts that, because Dr. Kropsky's examination and opinion was

more thorough than that of the other consulting examiner, Dr.

Yevsikova[4], to whom the ALJ assigned "partial weight," the ALJ's

determination was erroneous. (ECF No. 15 at 3.)  The court

respectfully disagrees with plaintiff's contentions and finds

---

[4] The ALJ assigned Dr. Yevsikova's opinion partial weight, noting that Dr. Yevsikova performed a one-time exam and the opinion was consistent with the ability to perform sedentary or light work.  The ALJ correctly noted that, though plaintiff appeared at the July 28, 2015 exam using a cane, treatment records dated July 20, 2015, less than two weeks earlier, indicated that plaintiff could walk independently.  (Tr. 20.)

that the ALJ did not err in assigning Dr. Kropsky's opinion
little weight while assigning Dr. Yevsikova partial weight.

When deciding how much weight to assign opinions that
do not justify controlling weight, an ALJ typically considers
"(i) the frequency of the examination and the length, nature,
and extent of the treatment relationship; (ii) the evidence in
support of the opinion; (iii) the opinion's consistency with the
record as a whole; and (iv) whether the opinion is from a
specialist." *Galletti v. Colvin*, No. 13-CV-6641 (WFK), 2015 WL
4251257, at *3 (E.D.N.Y. July 13, 2015) (citing 20 C.F.R. §§
404.1527(c)(2) and 416.927(c)(2).) Generally, when an ALJ is
evaluating the weight being given to a physician, "the less
consistent that opinion is with the record as a whole, the
less weight it will be given." *Snell v. Apfel*, 177 F.3d 128,
133 (2d Cir. 1999). Dr. Kropsky saw plaintiff only once and was
not a treating source. (ECF. No. 18-1 at 11; Tr. 958.)

The ALJ properly assigned Dr. Kropsky's opinion
"little weight" in part because Dr. Kropsky's finding that
plaintiff could not lift any weight was inconsistent with
plaintiff's testimony at the administrative hearing that she
could lift 5 to 10 pounds. (Tr. 20, 76, 960.) Further, other
evidence in the record contradicted Dr. Kropsky's findings of
extreme limitations on plaintiff's ability to lift any weight.
(Tr. 20, 76, 482, 541, 958, 1180-83.) Though plaintiff

17

correctly notes that testing performed by Dr. Kropsky assessed
plaintiff's muscle response, not overall strength,[5] the ALJ's
finding was not erroneous because it supported the finding that
plaintiff has basic mobility and is able to use her arms and
hands to lift, carry, and support some level of weight.  (ECF
No. 15 at 4-5; Tr. 20.)  Furthermore, the ALJ cited findings in
2017 which found that plaintiff possessed normal muscle
strength, gait and station.  (Tr. 20, 1180-83.)

     In addition, the ALJ did not err in assigning "partial
weight" to the opinion of Dr. Yevsikova.  (Tr. 19-20.)
Plaintiff cites precedent from *Curry v. Apfel*, that a statement
that plaintiff's condition is "moderate" is too vague to support
an ALJ determination.  (ECF. No. 15 at 4.)  Though use of the
terms "moderate" to describe a plaintiff's conditions can be
grounds for discounting an opinion, this is not the case when
the rest of a physician's opinion contains objective medical
evidence.  *Dier v. Colvin*, No. 13-cv-502 (WMS), 2014 WL 2931400,
at *4 (W.D.N.Y. June 27, 2014); *Tudor v. Comm'r of Soc. Sec.*,
No. 12-cv-2795 (SJF), 2013 WL 4500754, at *12 (E.D.N.Y. Aug. 21,
2013) ("[when a physician's] opinion was supported by additional
information, *i.e.*, objective medical findings, her opinion was

---

[5] *See* Usker Naqvi, Muscle Strength Grading, NCBI,
https://www.ncbi.nlm.nih.gov/books/NBK436008/ (last visited June 21, 2020.)

not vague and provided an adequate basis for the ALJ to infer
that plaintiff is capable of performing the exertional
requirements of sedentary work.")  Contrary to plaintiff's
assertion, *Curry* does not support plaintiff's argument because
it was decided in a situation where there was not additional,
specific information for an ALJ to evaluate.  *Curry v. Apfel*,
209 F.3d 117, 123 (2d Cir. 2000) ("use of the terms 'moderate'
and 'mild,' *without additional information*, does not permit the
ALJ . . . to make the necessary inference that Curry can perform
the exertional requirements of sedentary work.") (emphasis
added).

Plaintiff is correct that one line of Dr. Yevsikova's
opinion that the claimant "has [a] limitation to prolonged
sitting, climbing, kneeling, bending, pulling pushing, heavy
lifting, heavy carrying" is not specific enough to guide an ALJ
in determining the degree of this limitation.  (Tr. 542; ECF.
No. 15 at 3-4.)  Dr. Yevsikova made, however, specific findings
that plaintiff had 5/5 strength in her upper extremities, had
full hand and finger dexterity, was able to get on and off the
exam table without difficulty, and had knee pain that is
alleviated with medication.  (Tr. 540-41.)  The report also
contained details of plaintiff's medical condition, including
specific evidence concerning plaintiff's musculoskeletal system
and her ability to walk, sit, stand, grip objects and perform

19

activities of daily life.  (Tr. 538-542.)  This evidence was
sufficient for the ALJ to assign partial weight to Dr.
Yevsikova's opinion.

**III. Plaintiff's challenge to the ALJ's appointment was not timely and was therefore waived.**

In the alternative, plaintiff asserts that the court
should remand the case to a different ALJ because the ALJ who
presided over plaintiff's case was unconstitutionally appointed.
(ECF. No. 15 at 6-10.)  Though the Commissioner does not dispute
the constitutionality of the ALJ's appointment, he asserts that
plaintiff's argument is untimely because plaintiff failed to
raise the Appointments Clause issue at the administrative level.
(ECF. No. 17 at 10-15.)  For the reasons set forth below, the
court finds that plaintiff has waived her present challenge to
the ALJ's appointment because she failed to raise the issue
before the SSA.

On June 18, 2018, in *Lucia v. Securities and Exchange
Commission*, the United States Supreme Court held that ALJs
working for the SEC are "inferior officers," and thus subject to
the Appointments Clause of the United States Constitution (the
"Appointments Clause").  Under the Appointments Clause, Congress
may vest the power to appoint an inferior officer in the
President, the courts, or the heads of departments. *Lucia v.
SEC*, 138 S. Ct. 2044 (2018).  Thus, the appointment of an ALJ by

an SEC staff member, rather than by a party duly vested with
that power pursuant to the United States Constitution, does not
comply with the Appointments Clause, and the appropriate remedy
is to require a new hearing before the SEC or another ALJ who
had been constitutionally appointed.  *Id.*

Though *Lucia* did not specifically address the
constitutional status of ALJs who work in other federal
agencies, including the SSA, the *Lucia* decision prompted the
Acting Commissioner of the SSA, on July 16, 2018, to ratify the
appointments of ALJs as her own.  *See* Social Security Ruling 19-
1p: Titles II and XVI: Effect of the Decision in *Lucia v.
Securities and Exchange Commission (SEC)* on Cases Pending at the
Appeals Council, 84 F.R. 9582-02 ("Ruling 19-1p") (eff. Mar. 15,
2019).  The Acting Commissioner did the same with respect to
administrative appeals judges ("AAJs") who work at the Appeals
Council.  *Id.*  Ruling 19-1p clarified that the SSA would
consider a "**timely administrative challenge** to the ALJ's
authority based on the Appointments Clause" as "a broad policy
or procedural issue that may affect the general public
interest," which is reviewable by the Appeals Council under the
regulations.  *Id.* (emphasis added).

Ruling 19-1p sets forth the mechanism by which a
claimant may bring an Appointments Clause challenge to the ALJ
who reviewed her case:

> The Appeals Council will grant the claimant's request for review in cases where the claimant: (1) timely requests Appeals Council review of an ALJ's decision or dismissal issued before July 16, 2018; and (2) raises before us (either at the Appeals Council level, or previously had raised at the ALJ level) a challenge under the Appointments clause to the authority of the ALJ who issued the decision or dismissal in the case.

*Id.* In such cases where the claimant filed a timely request for review of an Appointments Clause challenge, the Appeals Council may vacate the ALJ's decision or dismissal, conduct a new and independent review of the claims file and remand the case to a different ALJ, or issue its own decision regarding the claim. *Id.*

Further, as noted by the government, "the vast majority of courts that have considered this issue following *Lucia* . . . have concluded that exhaustion before the ALJ is required." *Bonilla-Bukhari v. Berryhill*, 357 F. Supp. 3d 341, 351 (S.D.N.Y. 2019) (collecting cases). Most courts within the Second Circuit that have directly addressed the timing issue have also concluded that an Appointments Clause challenge must be raised "at the administrative level." *See Nestor v. Comm'r of Soc. Sec.*, No. 19-CV-580 (BMC), 2019 WL 4888649, at *3 (E.D.N.Y. Oct. 3, 2019) ("[A] Social Security claimant who fails to raise an Appointments Clause challenge to an ALJ's appointment at the administrative level waives this challenge."); *Doobay v. Comm'r of Soc. Sec.*, No. 19-CV-70 (AMD),

2020 WL 1031377, at *3 (E.D.N.Y. Mar. 3, 2020) (noting that plaintiff in *Lucia* made a timely challenge by contesting the validity of an ALJ's appointment before the Commission, and adopting the majority view regarding waiver); *Mungin v. Saul*, No. 19-CV-233, 2020 WL 549089, at *4 (D. Conn. Feb. 4, 2020) ("The plaintiff forfeited her Appointments Clause challenge by failing to raise this claim at the administrative level."); *Stearns v. Berryhill*, No. 17-CV-2031 (LTS), 2018 WL 4380984, at *5 (N.D. Iowa Sept. 14, 2018) ("In *Lucia*, the Supreme Court acknowledged the challenge was timely because it was made before the Commission. . . . In the context of Social Security disability proceedings, that means the claimant must raise the issue before the ALJ's decision becomes final.").

Although there has been some disagreement as to whether a claimant must bring an Appointments Clause challenge before the ALJ or can bring it, for the first time, on appeal before the Appeals Council, that distinction is immaterial here, where plaintiff failed to raise her Appointments Clause challenge at any time during the administrative proceedings. Plaintiff's counsel apparently disputes that plaintiff had an opportunity to raise her Appointments clause challenge during the administrative proceedings, (ECF No. 15 at 9-10), but the court finds this argument unavailing. Though plaintiff's failure to raise the Appointments Clause issue before the ALJ

may have been excusable, plaintiff's failure to raise the issue to the Appeals Council constituted waiver under Ruling 19-1p and was unjustified under these facts.

First, plaintiff did not receive notice of the Appeals Council's denial of her request for review until January 11, 2019, more than six months after the Supreme Court decided *Lucia*. Second, a natural, appropriate opportunity for plaintiff to have raised this issue would have been in plaintiff's July 23, 2018 brief to the Appeals Council, which was submitted approximately one month after *Lucia*, or in the two week-period before the Appeals Council stopped accepting additional evidence.[6] (Tr. 1-6.) Third, plaintiff's counsel proffers no reason why plaintiff could not have raised the Appointments Clause issue during the administrative proceedings.

As in *McMorris v. Commissioner*, here, "[p]laintiff's representative was certainly on notice that SSA ALJs ostensibly might be considered inferior officers . . . . If Plaintiff wanted to contest the ALJ's appointment, the matter should have first been brought up in the administrative proceeding, not in

---

[6] The court respectfully rejects the Commissioner's contention that plaintiff "should have been on notice of the [Appointments Clause issue] as far back as December 2016," when the Tenth Circuit issued a decision finding that the SEC ALJs' appointments were unconstitutional, which created a circuit split by June 2017, when *Lucia v. SEC*, 868 F.3d 1021, was decided by the District of Columbia Circuit.

federal court." *McMorris v. Comm'r of Soc. Sec.*, No. 18-CV-6118
(DB), 2019 WL 2897123, at *11 (W.D.N.Y. June 26, 2019).

Further, plaintiff's reliance on the *Sims v. Apfel*
line of cases is inapt.  In *Sims v. Apfel*, the United States
Supreme Court held that social security "[c]laimants who exhaust
[their] administrative remedies need not also exhaust issues in
a request for review by the Appeals Council in order to preserve
judicial review of those issues." *Sims*, 530 U.S. 103, 112
(2000).  *Sims* does not shed light on the situation here, where
plaintiff not only failed to exhaust issues in a request for
review by the Appeals Council, but also failed to raise them
before the ALJ.  As numerous courts within the Second Circuit
have noted, "*Sims* did not address the situation where the
claimant fails to raise the issue both before the ALJ and the
Appeals Council." *McMorris*, 2019 WL 2897123, at *11 (citing
*Bonilla-Bukhari*, 357 F. Supp. 3d at 350) (collecting cases).

Contrary to the few out-of-circuit cases cited in
plaintiff's brief, the weight of authority within this circuit
requires a social security claimant to exhaust issues for review
at the administrative level. *Lewis v. Berryhill*, 2018 WL
1377303, at *4; *Watson v. Astrue*, 2010 WL 1645060, at *3
(S.D.N.Y. Apr. 22, 2010) ("Although it appears that the Second
Circuit has not yet ruled on this precise issue, a number of
district courts in this Circuit have found that failure to raise

an issue before the ALJ waives that issue's review by the District Court."); *cf. Marchant on behalf of A.A.H. v. Berryhill*, No. 18-CV-345, 2019 WL 2268982, at *3-7 (E.D. Pa. May 28, 2019) (adopting the majority view requiring that Appointments Clause issue be raised during administrative proceedings). There is also an important practical element to SSA's requirement of issue exhaustion, as noted by one New York federal district court: "[T]he Commissioner and the public have a very strong interest in having Appointments Clause issues raised by counsel during the administrative process [because] the SSA receive[s] millions of applications for benefits each year, and the SSA must make decisions efficiently in order to ensure that the system continues to work[.]" *Danielle R. v. Comm'r of Soc. Sec.*, No. 19-CV-538 (ATB), 2020 WL 2062138, at *8 (N.D.N.Y. Apr. 29, 2020) (internal quotation marks and citation omitted).

The court is also unconvinced that plaintiff's failure to exhaust the Appointments Clause issue should be "excused because it would have been futile." (ECF No. 15, at 9.) Contrary to plaintiff's assertion, as the court noted above, a timely raised Appointments Clause challenge is governed by Ruling 19-1p, and would have been properly reviewed by the Appeals Council, and there is no value to speculating as to how the Appeals Council would have resolved the issue. For the

reasons set forth above, the court finds that plaintiff has waived her present challenge to the ALJ's appointment because she failed to raise the issue before the SSA.

## CONCLUSION

For the foregoing reasons, the court finds that the ALJ's conclusion, that plaintiff has not been disabled since April 20, 2013, within the meaning of the Act, was supported by substantial evidence and was not based on any legal error. The court also finds that plaintiff waived the Appointments Clause issue by failing to raise it before the ALJ and the Appeals Council; thus, there is no basis to remand the case to the SSA. Accordingly, plaintiff's motion for judgment on the pleadings is respectfully DENIED and the Commissioner's cross-motion on the pleadings is GRANTED. The Clerk of Court is respectfully directed to enter judgment, dismissing the case, and to close the case.

**SO ORDERED.**

Dated: July 8, 2020
      Brooklyn, New York

                                          _____/s/_____
                                          **Kiyo A. Matsumoto**
                                          United States District Judge